[Crim. No. 3672.   First Dist., Div. Two.   Jan. 21, 1960.]

THE PEOPLE, Respondent, v. CHARLOTTE HOLLOWAY, Appellant.

Kenneth L. Johnson and Everett H. Roan for Appellant.

Stanley Mosk, Attorney General, Preble Stolz, Deputy Attorney General, J. F. Coakley, District Attorney (Alameda), and John H. Sutter, Deputy District Attorney, for Respondent.

KAUFMAN, P. J.—The defendant, Charlotte Holloway, appeals from a judgment of conviction, entered on a jury verdict, of possessing narcotics in violation of section 11500 of the Health and Safety Code. On appeal, she argues that the

judgment must be reversed because of: (1) The trial court's erroneous admission of evidence; (2) The insufficiency of the evidence; (3) The prejudicial misconduct of the district attorney; and (4) The prejudicial misconduct of the trial court. There is no merit in any of these arguments.

There is no dispute in the facts. The defendant is a registered nurse who was employed at the Kaiser Hospital in Oakland. In the course of her duties, she had access to demerol, a synthetic drug containing isonipecaine. Isonipecaine by whatever trade name designated, is defined as a narcotic by subsection (i) of section 11001 of the Health and Safety Code.

Two witnesses, one a nurse and good friend of the defendant, the other her maid, who also lived with her, testified that they had seen vials of demerol in the defendant's apartment and reported the matter to the authorities. On May 7, 1958, shortly before midnight, as the defendant was on her way to her car in a parking lot near the hospital, she was stopped by Inspector Mantler of the Bureau of Narcotic Enforcement. After the inspector identified himself, he asked the defendant if he could search her and her apartment. At first, the defendant refused, but then consented. Inspector Mantler was accompanied to the defendant's apartment by Sergeant Hilliard of the Oakland police. After arriving at the apartment, Officer Hilliard asked the defendant to empty her pockets and place the contents on the couch. After the defendant had removed some items, the officer noticed she was hiding something in her hand. The defendant replied it was nothing but then produced a small bottle containing a transparent liquid labeled "distilled water." Two similar bottles were found in the defendant's bedroom in a box underneath her bed containing many other drugs from the hospital including prescriptions for individuals, formerly patients in the hospital. On examination by the state chemist, all three of these bottles were found to contain demerol.

The hospital record did not show a loss of demerol equivalent to the amount found in the three bottles. The uncontroverted evidence, however, indicated that the defendant had access to demerol, handled it in her work every day, and could have obtained it from the hospital in several ways without a large loss appearing on the hospital records. The hospital pharmacist testified that defendant's records showed an unusually high incidence of accidents and contamination of demerol syringes for one nurse, and that the hospital practice was to flush down the sink any accidentally contaminated

demerol. A doctor testified that he received an unusually large number of requests for renewals of demerol prescriptions from the defendant. Another doctor testified while working on the ward with the defendant, he received many complaints from patients that "the shot you are giving me just isn't stopping the pain." He, therefore, changed from demerol to morphine, a stronger drug. This doctor testified that he had no way of checking up on the nurses, and that he could order a drug and "the nurse can give them saline and water."

█ The first contention on appeal is that the trial court erred in admitting evidence which connected the defendant with the theft of various other drugs from the hospital besides the three bottles containing the demerol. She argues that the element of theft confused and unduly prejudiced the jury as she was charged only with possession. There is no merit in this argument. As one element of the offense here charged was the defendant's knowledge that the substances she possessed were a narcotic, it was proper to introduce evidence tending to show that she was familiar with the drug. The evidence here complained of tended in some degree to show such knowledge. Defendant admitted the possession of these other medicines; the fact that the bottles of "distilled water" were found in the same place with the other medicines under her bed tended to show that the former were also in her possession. (*People* v. *Douglas,* 141 Cal.App.2d 33 [296 P.2d 1].) The fact that defendant had taken other medicines without authority was a sufficiently similar occurrence tending to show a common plan or system of taking medicines, which, if believed by the jury, would indicate that the defendant had knowledge of the narcotic content of the bottles. (*Cf. People* v. *Bean,* 149 Cal. App.2d 299 [308 P.2d 27].)

Defendant objects that all of the above evidence was inadmissible because it tended to show that the defendant was guilty of crimes with which she was not charged. █ The rule has been clearly stated in *People* v. *Riser,* 47 Cal.2d 566 at 578 [305 P.2d 1]:

"Evidence of other crimes is not admissible when its sole effect is to show a criminal disposition, but if it 'tends logically and by reasonable inference to establish any fact material for the prosecution, or overcome any material fact sought to be proved by the defense, [it] is admissible although it may connect the accused with an offense not included in the charge.' (*People* v. *Woods,* 35 Cal.2d 504, 509 [218 P.2d 981]; see *People* v. *Citrino,* 46 Cal.2d 284, 288 [294 P.2d 32].)"

As there was no dispute that the defendant had access to demerol and that the three bottles were found in her possession, the prosecution had to prove the material fact of the defendant's "knowledge." ▮ Knowledge of the narcotic character of the article possessed is an essential ingredient of the offense of possession and such a fact may be inferred from the surrounding circumstances. (*People* v. *Winston,* 46 Cal.2d 151 [293 P.2d 40].) The evidence complained of was therefore admissible on the theory of proving defendant's knowledge of the character of the contraband she was charged with possessing. (*Cf. People* v. *Pettyjohn,* 172 Cal.App.2d 188, 198 [342 P.2d 416].)

▮ The defendant also complains of the prejudicial effect of the testimony of two of her witnesses which tended to show that the defendant was a user of narcotics. Again such evidence was relevant to show defendant's knowledge of the contents of the bottles labeled "distilled water." (*People* v. *Bagley,* 133 Cal.App.2d 481 [284 P.2d 36].) Furthermore, the defendant may not predicate error on testimony which she introduced. (*Gjurich* v. *Fieg,* 164 Cal. 429 [129 P. 464, Ann. Cas. 1916B 111].)

▮ The next argument is that the evidence is insufficient to support the verdict. ▮ The offense of possession of narcotics is comprised of two elements: a physical or constructive possession and the knowledge of the character of the object and the unlawfulness of the possession thereof. (*People* v. *Winston, supra.*) To show such knowing possession, conduct of parties and admissions or contrary statements are frequently sufficient. (*People* v. *Barnett,* 118 Cal.App.2d 336 [257 P.2d 1041]; *People* v. *Foster,* 115 Cal.App.2d 866 [253 P.2d 50]; *People* v. *Wayne,* 41 Cal.2d 814, 823 [264 P.2d 547].)

▮ The defendant admitted taking bottles labeled "distilled water" from the hospital, but denied that she knew the bottles found in her apartment contained demerol. When first examined under oath, the defendant denied taking any drugs from the hospital. The defendant later explained the presence of the large quantity of drugs found in her apartment by stating that she had merely walked out of the hospital with them in her pockets and intended to return them. When questioned, she stated that she needed the distilled water for giving herself vitamin shots or giving drugs to her cats. At the trial, the defendant testified that she took the bottles of distilled water home because she wanted to build bricks for a patio. At the time of the arrest, the defendant admitted taking

the bottle which was in her pocket. At the trial, however, she testified she could not have taken that vial because it contained more liquid than any bottle she would have taken from the hospital. Furthermore, there was also defendant's attempt to conceal the bottle in her jacket from the officers. This in itself would be sufficient to support the verdict as it indicates guilty knowledge of what the bottle contained. (*People* v. *Tennyson*, 127 Cal.App.2d 243 [273 P.2d 593].)

On appeal, we are limited to a determination of whether there is in the record any substantial evidence, contradicted or uncontradicted, to support the conclusion reached in the court below. (*People* v. *Douglas*, 141 Cal.App.2d 33 [296 P.2d 1].) After conviction all intendments are in favor of the judgment and a verdict will not be set aside unless the record clearly shows that upon no hypothesis whatever is there sufficient evidence to support it. (*People* v. *Roy*, 175 Cal.App.2d 551 [346 P.2d 415].) The evidence herein, considered in the light of these rules, is in our opinion more than sufficient to support the judgment.

Defendant next contends that the district attorney was guilty of prejudicial misconduct when in bad faith he put the following question to her character witnesses, Dr. and Mrs. Vold:

"Q. Dr. Vold, had you heard that while Miss Holloway was in the United States Army, she was the subject of an investigation relating to the illegal use of—illegally taking drugs? A. I hadn't heard that."

"Q. Mrs. Vold, had you heard that while Miss Holloway was in the United States Army, she was subject of an investigation for improper handling of drugs? A. No, I had not.

"MR. JOHNSON: I take it my objections go to this field?

"THE COURT: Yes.

"MR. SUTTER: Q. Had you heard that one of the officials and registered nurse of the Cowell Memorial Hospital in Berkeley had reported to the Kaiser Foundation Hospital in Oakland that Miss Holloway, one of their former nurses, was a person whose integrity was questioned? A. I never heard that, but I don't believe it.

"Q. You had heard that Miss Holloway had at one time worked at the Cowell Memorial Hospital, hadn't you? A. No, I hadn't."

However, there was a factual basis for these questions as was subsequently brought out by defendant's explanation that the investigation concerned the loss of some barbiturates. De-

fendant has not met her burden of proof of showing that the above questions were asked in bad faith. (*People* v. *Fowzer,* 127 Cal.App.2d 742 [274 P.2d 471].) Furthermore, the court carefully instructed the jury as follows as to the testimony of her character witnesses:

"Two witnesses called by the defendant testified as to her reputation for truth, honesty and morality. On cross-examination these witnesses were asked whether they had heard of certain matters adverse to her reputation in these respects. Such an inquiry may be used only to test the opinion expressed by the witness and for no other purpose. The mere asking of such questions does not constitute any evidence or proof of the matters therein contained."

Defendant next argues that it was prejudicial error for the district attorney in his opening statement to refer to the defendant as "stealing narcotics." As the evidence tended to show that the defendant removed drugs from the hospital without authority, no error can be prejudicial on the above. (*People* v. *Quisenberry,* 151 Cal.App.2d 157 [311 P.2d 99].)

Defendant's final contention is that the trial court was guilty of prejudicial misconduct on two occasions. The first of these, it is alleged, occurred during the examination of Inspector Mantler. A question arose as to what demerol was and whether it was one of the narcotics specifically prohibited by statute [Health & Saf. Code, § 11001.] The following ensued:

"THE WITNESS: I think it is one of the specific narcotics in the statute.

"MR. SUTTER: I believe it is but we will get the statute. I don't think it makes much difference, does it?

"It is just a matter of letting the jury know what this is because it is that maybe some of them have never heard of it before.

"MR. JOHNSON: What materiality would that have?

"THE COURT: I certainly am going to instruct them Demarol is a narcotic for medicine by law."

We think the above was entirely proper and in no way prejudicial to the defendant.

The second alleged misconduct of the trial court was the court's explanation to defendant's counsel in the presence of the jury, as to why he permitted the introduction into evidence of the box of miscellaneous drugs found in the defendant's apartment, as follows:

"THE COURT: No, but here's the obvious thing—I am not

arguing the case—but if these three bottles or containers that have been marked as Exhibit 1 and the two bottles marked as Exhibit 2-A and 2-B, respectively, were in and among a bunch of containers of medicine or what not, and so forth, and if the proof would indicate that these other miscellaneous items, non-narcotics, not claimed to be narcotics, belonged to the defendant and that she was the one who had placed these various non-narcotic objects in these cardboard boxes, then at least the prosecution could urge that these were likewise placed in the box by the defendant. Do you see? And so I think, at least it occurs to me, that they have a right to argue that, and I would therefore overrule the objection.''

"THE COURT: That doesn't make any difference, but it shows a course of conduct. I am not arguing the case or judging it because that's what the jury are for, but certainly the prosecution can argue that she was carrying away from the Hospital, medicines, non-narcotics though they may be, without any right or authority. I mean, they certainly can argue that.

"MR. JOHNSON: According to my understanding, that is contrary to law.

"THE COURT: I think it is very relevant, very, very——

"MR. JOHNSON: Very prejudicial, and improper.

"THE COURT: Suppose a fellow is a clerk in a store; suppose they sell shoes, sweaters, shirts and whatnot. Suppose they elect to charge him with stealing a dozen shirts. Don't you think that surrounding incidents—if they find shoes have been taken out of the store, sweaters have been taken out of the store—are all relevant to the question of whether or not the shirts were stolen or taken from the store?''

Again, we can see no prejudice to the defendant as the court was merely explaining his ruling to counsel.

We conclude that the judgment finds ample support in the record before us.

Judgment affirmed.

Dooling, J., and Draper, J., concurred.