[Crim. No. 9757. First Dist., Div. One. July 21, 1972.]

THE PEOPLE, Plaintiff and Respondent, v.
BENNY JOSEPH MEDINA et al., Defendants and Appellants.

812

**COUNSEL**

George Sherinian, under appointment by the Court of Appeal, for Defendants and Appellants.

Evelle J. Younger, Attorney General, and Gloria F. DeHart, Deputy Attorney General, for Plaintiff and Respondent.

**OPINION**

**MOLINARI, P. J.**—Defendant Benny Joseph Medina appeals from a judgment of conviction for violation of Penal Code section 211 (armed robbery). Defendant Walter Frederick Morrison appeals from a judgment of conviction for violation of Penal Code section 211 (armed robbery) and Penal Code section 240 (simple assault).

## The Facts

The evidence most favorable to the People, as the respondent, is as follows: On April 9, 1970, between 1:30 and 2 a.m., Ronald Dennis Bumb responded to a knock at the door of his residence in Fort Bragg. When he opened the door two men were standing there. Bumb was asked if he knew a person by the name of "Charlie" and Bumb responded that he did.[1] The men asked Bumb if he owed $100 to "Charlie" and when Bumb responded that he did, they said they were there to collect it.

Bumb described one of the men as "Mexican or colored and an Indian" and the other as "white." The former was described as the shorter of the two and as being about 5 feet 10 inches tall with a mustache and wearing a brown leather jacket. The man described as "white" was a little taller, about 5 feet 10 or 5 feet 11 inches tall, with a "pretty good growth of beard . . . full on the face."

The two men had pistols and they told Bumb to turn around and lie on the floor. Bumb complied and his legs and hands were bound with cords and he was gagged with part of a towel. After he was bound and gagged a wallet containing "a little over $200" was taken from Bumb's pocket. While the shorter of the two did the binding and gagging the taller proceeded to take "things" out of the house. The last thing Bumb remembered was being hit on the head with a hard object by the shorter of the two men, hearing a door slam, and the noise of a car "brought up to the door." The car was described by Bumb as an "older car" with a "blown muffler." From the time the men knocked at the door until they left 10 to 15 minutes elapsed.

In addition to the $200, the men took Bumb's wristwatch, a Sony stereo cassette recorder, a stereo record player, some records, a stereo speaker, a set of headphones, a bedspread, some after-shave lotion, various stereo cassettes, a wooden object, a large wooden fork, and his car keys.

After the two men left Bumb loosened his bonds with wire cutters and then went to the Fort Bragg police station where he reported the incident. This occurred at approximately 2:45 a.m. The police took a statement from Bumb and then sent out an "all points bulletin" (hereinafter referred to as "APB") describing the men who robbed Bumb and the property that was stolen.

At approximately 4:55 a.m. two men and a woman came into Denny's

---

[1]Bumb identified "Charlie" as being Charles Evans.

Restaurant in Santa Rosa. Several police officers sitting at the counter recognized the men as fitting the description in the APB. The men and the woman went into the restrooms. While they were there the police cleared the restaurant and called for reinforcements. When the men and the woman emerged from the restrooms they were placed under arrest.

The police officers asked the two men and the woman "how [they] had gotten to Denny's." The woman, who had identified herself as Ruby Burger, stated that they had hitchhiked. The subjects were then taken to the police station. Some of the officers searched for a car. First they looked in Denny's parking lot; then across the street at an Enco gasoline service station where they found a 1960 Dodge which aroused their suspicions because of its location, its hood was warm, and a stereo set under a blanket on the back seat was partially visible when an officer shone his flashlight through the window. The APB had described a stereo as having been stolen.

One of the officers was left to guard the Dodge while the other officers went to the police station for the purpose of interrogating the suspects. At the station one of the officers saw a watch matching that described in the APB on the arm of the "bearded" suspect later identified as defendant Morrison. This officer then returned to the car, which was unlocked, and proceeded to search it. The search disclosed the stolen goods, including the stereo, along with a .22 revolver, a .22 pistol, a .22 rifle with scope, and several rounds of .22 long rifle hollow point bullets, concealed under the rear seat. In the meantime, back at the station, Morrison took the watch he was wearing and flushed it down the toilet in his cell.[2]

At the trial Bumb refused to positively identify either defendant and even attempted at one point to get the charges dropped. He stated his reasons for so doing were that he did not want his past felony conviction brought up and he feared losing his job.

---

[2]Defendants Morrison and Medina took the stand in their own defense. The essence of their testimony was that on the night in question they, together with Ruby Burger, went to Bumb's residence to ascertain why he had not obtained narcotics for Morrison who had given him $800 to do so; that Morrison accused Bumb of "burning him" for $800; that Bumb gave Morrison $200 from his wallet and the other items found by the police in the Dodge; that Bumb struck Morrison when he said he was going to sell "the stuff" and a fist fight ensued; that Medina pulled Morrison away, and that then they and Miss Burger went to Santa Rosa where they stopped at Denny's where they were arrested. With respect to the watch, Morrison testified that he flushed it down the toilet because he overheard a statement by one of the officers to the effect that "when we take the stand you identify the watch and that will sink him . . . ."

## The Motion to Suppress

Prior to the trial defendants made a motion to suppress evidence of the stolen property pursuant to Penal Code section 1538.5.[3] This motion was denied. Defendants now seek a review of the validity of the search and seizure pursuant to subdivision (m) of section 1538.5. ██ Such review is made on the basis of the record made at the special hearing of the motion pursuant to section 1538.5 and may be sought notwithstanding there was no objection to the introduction of the seized material at the trial. (See *People* v. *Hubbard*, 9 Cal.App.3d 827, 832 [88 Cal.Rptr. 411]; *People* v. *Superior Court*, 9 Cal.App.3d 203, 209 [88 Cal.Rptr. 21].)

We first observe that a proceeding under this section is one in which a full hearing is held on the issues before the superior court sitting as a finder of fact. (*People* v. *Heard*, 266 Cal.App.2d 747, 749 [72 Cal.Rptr. 374]; *People* v. *Superior Court*, 3 Cal.App.3d 476, 488 [83 Cal.Rptr. 771]; *People* v. *Superior Court*, *supra*, 9 Cal.App.3d 203, 209.) ██ When the question of the legality of a search and seizure is raised, the defendant makes out a prima facie case when he establishes that private premises were entered or a search made without a search warrant and the burden then rests on the prosecution to prove that the search was reasonable. (*People* v. *Edwards*, 71 Cal.2d 1096, 1099 [80 Cal.Rptr. 633, 458 P.2d 713]; *Badillo* v. *Superior Court*, 46 Cal.2d 269, 272 [294 P.2d 23]; *People* v. *Carson*, 4 Cal.App.3d 782, 786 [84 Cal.Rptr. 699]; *Hewitt* v. *Superior Court*, 5 Cal.App.3d 923, 926 [85 Cal.Rptr. 493].)

██ "In reviewing a determination of a trial court on a 1538.5 motion, the function of the reviewing court is to determine whether there was substantial evidence to support the trial court's findings. [Citations.]" (*People* v. *Superior Court*, *supra*, 9 Cal.App.3d 203, 209; *People* v. *Superior Court*, *supra*, 3 Cal.App.3d 476, 488; *People* v. *Superior Court*, 264 Cal.App.2d 165, 166 [70 Cal.Rptr. 362].) "This rule, however, is not applicable in cases involving searches and seizures in which the facts bearing on the legality of the search are undisputed and establish as a matter of law that the evidence is or is not admissible. [Citations.]" (*People* v. *Superior Court*, *supra*, 3 Cal.App.3d at p. 488.)

In the instant case the essential facts are undisputed. Accordingly, the question whether the physical evidence found in the Dodge automobile was admissible is a question of law.

We first observe that it is uncontested that the search was made without a warrant. The search, therefore, is subject to the following basic consti-

---

[3]Unless otherwise indicated, all statutory references are to the Penal Code.

██

tutional rule: ". . . 'searches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions.' The exceptions are 'jealously and carefully drawn,' and there must be 'a showing by those who seek exemption . . ., that the exigencies of the situation made that course imperative.' '[T]he burden is on those seeking the exemption to show the need for it.' . . ." (*Coolidge* v. *New Hampshire,* 403 U.S. 443, 454-455 [29 L.Ed.2d 564, 576, 91 S.Ct. 2022].)

With particular regard to the search of automobiles we perceive that one of the well-delineated exceptions to the basic constitutional rule is that a warrantless search may be made incident to a lawful arrest provided the search extends only to the arrestee's person and the area within his immediate control, i.e., the area from within which he might gain possession of a weapon or destructible evidence. (*Chimel* v. *California,* 395 U.S. 752, 763 [23 L.Ed.2d 685, 694, 89 S.Ct. 2034]; see *Coolidge* v. *New Hampshire, supra,* 403 U.S. 443, 457, fn. 11 [29 L.Ed.2d 564, 577].) In the instant case the People do not contend that this exception is applicable.

■ Another exception is that the police may make a warrantless search of an automobile whenever they have probable cause to do so. This rule, however, has certain limitations dependent upon the nature of the goods to be seized. If the goods are stolen or are contraband, or are dangerous instrumentalities and the seizing officer has reasonable or probable cause for believing that the automobile has such goods therein, the vehicle may be searched without a warrant. (*Carroll* v. *United States,* 267 U.S. 132, 149-150, 153, 156 [69 L.Ed. 543, 549-550, 551, 552, 45 S.Ct. 280, 39 A.L.R. 790]; *Chambers* v. *Maroney,* 399 U.S. 42, 48-49 [26 L.Ed.2d 419, 426-427, 90 S.Ct. 1975]; *Coolidge* v. *New Hampshire, supra,* 403 U.S. 443, 458-461, 462 [29 L.Ed.2d 564, 578-579, 580]; *People* v. *Terry,* 70 Cal.2d 410, 428 [77 Cal.Rptr. 460, 454 P.2d 36].) Where the goods are not contraband, stolen or dangerous the police may make a warrantless search of an automobile whenever they have probable cause to do so *and* it is not practicable to secure a warrant because the vehicle can be quickly moved out of the locality or jurisdiction in which the warrant must be sought. (*Coolidge* v. *New Hampshire, supra,* 403 U.S. at pp. 459-460 [29 L.Ed.2d at p. 579]; *Carroll* v. *United States, supra,* 267 U.S. at p. 153 [69 L.Ed. at p. 551]; *Chambers* v. *Maroney, supra,* 399 U.S. at p. 51 [26 L.Ed.2d at p. 428].) In the latter situation probable cause is not enough; there must also be "exigent circumstances" justifying the police

in proceeding without a warrant. (See *Coolidge* v. *New Hampshire, supra,* at p. 464 [29 L.Ed.2d at p. 581].)

In the present case the People contend that the search was legal under the theory that probable cause existed to believe the automobile contained contraband. In considering this contention we first observe that the APB stated that a robbery had been committed and that it contained a description of the robbers. This description fitted defendants. The said report also indicated that an automobile was used in the robbery and it was referred to therein as an older model car. It was reasonable for the officers to entertain the belief that defendants had come to Denny's Restaurant in an automobile since the robbery was reported to have occurred approximately two hours earlier in Fort Bragg, located in another county. Under these circumstances the officers had reasonable cause to believe that the fruits of the robbery would be contained in an automobile used by the robbers in coming to Denny's. Accordingly, they had reasonable cause to believe that such an automobile would be parked in an area in the vicinity of Denny's. Officer Wright checked with every patron in Denny's and found that all of the cars in its parking lot were accounted for. It was then that Wright looked outside the parking lot and observed the Dodge automobile parked in a gasoline service station across the street from Denny's. When Wright reached the vehicle he touched its hood and found that it was warm. This was an indication that the vehicle had been recently driven.

We observe here that Wright's entry into the gas station was, at worst, nothing more than a formal or simple trespass committed in the performance of his duties—it was not an illegal entry on the property. ■ A simple trespass without more does not invalidate a subsequent search and seizure. (*People* v. *Terry, supra,* 70 Cal.2d 410, 427; *People* v. *Curley,* 12 Cal.App.3d 732, 747 [90 Cal.Rptr. 783]; *People* v. *Seals,* 263 Cal.App. 2d 575, 579 [69 Cal.Rptr. 861].)[4]

We need not consider whether, at this stage of the investigation, Officer Wright had probable cause to search the vehicle. ■ That justification clearly arose when he looked into the vehicle and observed the partially exposed stereo on the back seat. Wright, at that time, knew from the APB report that a stereo was included among the objects reported stolen in the robbery. Since the police officer was in a place where he had a right to be, he was justified in seizing evidence of the robbery without first obtaining a warrant. (*Harris* v. *United States,* 390 U.S. 234, 236 [19 L.Ed.2d

---

[4]It may also be observed that such a trespass was apparently committed by the driver of the Dodge automobile who parked it in the gasoline service station after business hours.

1067, 1069, 88 S.Ct. 992]; *People* v. *Terry, supra,* 70 Cal.2d 410, 428; *People* v. *Curley, supra,* 12 Cal.App.3d 732, 747.) This conclusion does not conflict with the "plain view" principle articulated in *Coolidge* to the effect that the police may not seize evidence in plain view without a warrant, absent "exigent circumstances," without prior justification and unless the discovery of the evidence is inadvertent. (403 U.S. 443, 465-472 [29 L.Ed.2d 564, 582-587].) We observe that *Coolidge* recognizes that this principle yields where the case involves contraband, or stolen goods or objects dangerous in themselves. (At p. 472 [29 L.Ed.2d at p. 587].) Moreover, in the instant case the police, as pointed out above, had a prior justification for an intrusion and they came upon the evidence inadvertently. Here, although it is true that the police were searching for the robbers' automobile and the stolen property they suspected it contained, they did not know in advance the location of the automobile nor that it did in fact contain such property. Accordingly, the discovery of the evidence was inadvertent since the police did not know in advance the location of the evidence and because of such knowledge intended to seize it. (See *Coolidge* v. *New Hampshire, supra,* 403 U.S. at p. 470 [29 L.Ed.2d at p. 585].)

The probable cause in the instant case justifying a search of the vehicle for stolen property was further fortified by the observance at the police station of Bumb's watch described in the APB on Morrison's wrist. The totality of all the circumstances provided probable cause for the search of the car in order to seize the stereo and to search the car for the remaining stolen goods.

■ The fact that the police did not search the automobile immediately upon discovery of the stereo but did so after a visit to the station house was reasonable because the probable cause factor still obtained and so did the mobility of the car. (*Chambers* v. *Maroney, supra,* 399 U.S. 42, 52 [26 L.Ed.2d 419, 428-429].) *Chambers,* as does *Carroll,* emphasizes the mobility of automobiles as a factor in a search without a warrant where there is probable cause to search it. As observed in *Chambers,* the factor of mobility is present even though the car has been immobilized by the police since the Fourth Amendment does not deny the use of the car to anyone until a warrant is secured. (At p. 52.) Given probable cause to search an automobile the police may seize and hold the car until a warrant is obtained or they may search it without a warrant. (399 U.S. at p. 52.)

*Evidence of Prior Conviction*

Defendant Medina maintains that the introduction into evidence of a former conviction to which he had entered a plea of guilty deprived him of a fair trial because it prejudiced the jury against him. He asserts, initially,

that his former conviction did not meet the standards set forth in *Boykin v. Alabama* (1969) 395 U.S. 238 [23 L.Ed.2d 274, 89 S.Ct. 1709], and that while *Boykin* is not retroactive (*In re Tahl,* 1 Cal.3d 122, 130 [81 Cal.Rptr. 577, 460 P.2d 449]) a conviction which does not meet the *Boykin* standards ought not to be used for purposes of impeachment. *Boykin* held that it is error to accept a plea of guilty without an affirmative showing that the defendant made a free and intelligent waiver of his privilege against self-incrimination, the right to a trial by jury, and the right to confront one's accusers. (395 U.S. at pp. 242-244 [23 L.Ed.2d at pp. 279-280]; *In re Tahl, supra.*) He asserts, further, that evidence of a prior conviction may not be admitted unless it has a direct bearing on the witness' reputation for honesty and veracity.[5]

■ The People properly contend that *Boykin* does not apply to convictions obtained prior to its decision. *Boykin* has prospective effect only. (*In re Tahl, supra,* 1 Cal.3d 122, 130.) As to the admissibility of a prior conviction for purposes of impeachment, the People contend that the judge has no discretion to refuse evidence of prior convictions because of the legislative determination embodied in Evidence Code section 788 that any prejudice to the defendant is outweighed by the probative value in terms of judging the defendant's testimony.

The record discloses that after the People rested and before any question was asked concerning prior convictions, a discussion was had in chambers concerning Medina's "prior conviction" on which the court had reserved argument and decision on the basis of an "anticipatory objection" interposed by his counsel. The argument was directed to a second degree burglary conviction in 1962 and the applicability of *Boykin* to the plea of guilty in that case. The court stated, ". . . I am going to rule that it is admissible."

Later in the trial, when Medina took the stand in his own defense, his counsel asked him if he had ever been convicted of a felony and Medina responded that in May 1962 he was convicted of second degree burglary and that he had not been convicted of any other felonies. On cross-examination he was asked if he had been convicted of grand theft in 1959 in Los Angeles County. Medina answered in the affirmative but stated he did not know it was a felony since he had been committed to the Youth Authority. He was then asked on cross-examination whether in November 1960 he was convicted of escape. Medina responded he did not remember.

---

[5]Medina acknowledges that evidence of a prior crime may be admitted to show modus operandi, common design or plan, scheme, or knowledge. (Evid. Code, § 1011, subd. (b).) We need not discuss this exception since the prior conviction was only offered for purposes of impeachment.

On redirect Medina testified that it was his belief that if he was not sentenced to prison the crime was not a felony.

Medina complains of the admission of only one prior conviction, i.e., he speaks in the singular. The most obvious reference is to the second degree burglary conviction in 1962—since that conviction was the object of discussion at the hearing when the issue was raised concerning the application of *Boykin*. The People in their brief seem to think that more than one conviction is being complained of, since they speak in the plural.

Assuming that Medina is urging error in the admission of the 1962 conviction, it should be pointed out that the only evidence admitted on that conviction was elicited by Medina himself. When the prosecution sought to elicit from Medina whether he had committed prior felonies it was with reference to the 1959 and 1960 convictions. Medina's only objection to this interrogation was to the questions directed to how long Medina had served for one of these convictions, i.e., the one for which he had been committed to the Youth Authority. This objection was sustained.

█ Adverting to the 1962 conviction, we observe that evidence of this conviction was first introduced by Medina on direct examination. Medina's evident intent in so doing was to minimize its impact in the event the prosecution questioned him regarding it on cross-examination. An appellant cannot complain of evidence which he introduced himself. (*Gjurich* v. *Fieg*, 164 Cal. 429, 433 [129 P. 464]; *People* v. *Holloway*, 177 Cal.App.2d 287, 292 [2 Cal.Rptr. 48]; *People* v. *Marsh*, 170 Cal.App.2d 284, 288 [338 P.2d 495].) If Medina's counsel believed that the 1962 conviction could not be used for purposes of impeachment, he could have preserved his point by objecting to any question by the prosecutor concerning it if the prosecutor asked such a question. But, instead of so doing, he offered evidence of the 1962 conviction himself. We here observe again that Medina's "anticipatory objection" was predicated solely on *Boykin* error and not on the basis that, if the 1962 conviction was valid, it could not be alluded to for purposes of impeachment. Medina was therefore bound and restricted to the specifics of his objection. (Evid. Code, § 353, subd. (a).)

Assuming that Medina is also urging error with respect to the other "prior convictions" alluded to by the prosecutor, we observe that this subject was opened up by Medina himself when his counsel asked him on direct examination if he had been convicted of other felonies and he responded in the negative. █ If the prosecutor had knowledge of other felonies and was acting in good faith he was entitled to properly ask such questions as were reasonably necessary to develop the fact of conviction

of a felony, particularly if Medina's answers were evasive or equivocal. (*People* v. *Miller,* 188 Cal.App.2d 156, 170 [10 Cal.Rptr. 326]; *People* v. *Howard,* 166 Cal.App.2d 638, 648 [334 P.2d 105]; see *People* v. *Linyard,* 151 Cal.App.2d 50, 55 [311 P.2d 57].) The record does not disclose that Medina was in fact convicted of other felonies, nor does it disclose the good faith of the prosecutor. ▮ In any event, no objection to the prosecutor's questions was interposed and he may not now complain for the first time on appeal. (*People* v. *Howard, supra; People* v. *Manfredo,* 210 Cal.App.2d 474, 480-481 [26 Cal.Rptr. 817]; *People* v. *Swayze,* 220 Cal.App.2d 476, 494-495 [34 Cal.Rptr. 5].) Moreover, assuming that the prosecutor was guilty of misconduct in his examination, we do not perceive such conduct to be so flagrant that prejudice necessarily resulted, notwithstanding the failure to object or the request for any admonition. (See *People* v. *Swayze, supra,* at p. 495; *People* v. *Berryman,* 6 Cal.2d 331, 337 [57 P.2d 136].)

Medina's main position is, basically, that evidence of a prior conviction for purposes of impeachment should not be allowed by this court because of the irreparable damage it does to a defendant's cause by prejudicing his testimony in the eyes of the jury, especially where the prior offense is one which has nothing to do with truth or veracity. In considering this contention we first note that Evidence Code section 788 provides as follows: "For the purpose of attacking the credibility of a witness, it may be shown by the examination of the witness or by the record of the judgment that he has been convicted of a felony . . . ." This section has been construed by the Courts of Appeal as meaning that the trial judge has no discretion to exclude evidence of a prior felony conviction when the lawfulness of that conviction has been established or is uncontested. (See *People* v. *Beagle,* 6 Cal.3d 441, 451 [99 Cal.Rptr. 313, 492 P.2d 1] and cases there cited.)

In *Beagle* the Supreme Court considered Evidence Code section 788 in its relationship to Evidence Code section 352 which grants the trial judge discretion to exclude otherwise admissible evidence " 'if its probative value is substantially outweighed by the probability that its admission will . . . create substantial danger of undue prejudice. . . .' " (At p. 451.) Upon the basis of the two statutes considered together it was there held that a trial judge has discretion to exclude evidence of a prior felony conviction when its probative value or credibility is outweighed by the risk of undue prejudice. (6 Cal.3d at pp. 452-453.)

The instant case was tried before the decision in *Beagle* and at a time when decisions of the Courts of Appeal had reached the conclusion that

a trial judge has no discretion to exclude evidence of a prior felony conviction. In view of these decisions it is understandable why Medina did not urge the trial court, in exercising its discretion, to exclude evidence of the 1962 conviction on the basis that its probative value was outweighed by the risk of undue prejudice. ▮ The rule declared in *Beagle* is not retroactive, however, and the standards therein enunciated, because the risk of prejudice sought to be avoided is not of constitutional dimensions, apply only to trials begun after the date of its decision. (6 Cal.3d at pp. 454-455, fn. 2.)

## The Instructions

Defendants contend that certain instructions which we have set out in the margin,[6] although concededly individually correct, were confusing and that such confusion is evidenced by the jury's request for a clarification on first and second degree robbery. The clarifying instructions and the colloquy between the foreman and the jury are also set out in the margin.[7]

Defendants point out one instance of claimed confusion. They contend that the only *real question* before the jury here was whether the transaction which occurred was a robbery or a security transaction. They claim that a "not guilty" verdict against one was almost impossible because the jury could not give a fair consideration to each of the charges against each defendant when a determination of first degree robbery against one prac-

---

[6]"When a robbery is perpetrated by two or more persons, any one of whom is then armed with a dangerous or deadly weapon, the robbery is of the first degree, and each person guilty of that robbery is guilty of robbery of the first degree, whether or not he personally was so armed. . . ."

". . . In this case you must decide separately whether each of the two defendants is guilty or not guilty, and this applies with respect to each count. . . . In this case there are three possible verdicts as to count one and three possible verdicts as to count two with respect to each defendant. . . . Only one of the possible verdicts as to each defendant may be returned by you as to any particular count. . . ."

[7]In response to the jury's request for a clarification as to what constitutes first and what constitutes second degree robbery, the court replied as follows:

"Robbery which is perpetrated by one or more persons; any one of them being armed with a dangerous or deadly weapon is robbery in the first degree. All other kinds of robbery are of the second degree. [¶] If you should find the defendant guilty of robbery, it will be your duty to determine the degree thereof and to state that degree in your verdict. [¶] If you find the defendant guilty of the offense of robbery, but have a reasonable doubt as to whether it was of the first or second degree, it is your duty to find him guilty of that crime in the second degree. [¶] Does that cover the question you had?"

"THE FOREMAN: I think it does. Would it be possible to find one person guilty of first degree—— THE COURT: Now, listen. You are dealing with two people. You are dealing with two charges against each one and you treat them separately. THE FOREMAN: Could you read the instructions one more time, please?" (At which point the judge repeated the clarification given above.)

tically demanded that both be found guilty under the instructions given. Under these instructions the jury would have to determine if each of the defendants was involved in the transaction which occurred, and then determine which transaction occurred, and if it was robbery, was it committed by at least one person carrying a weapon. If so, it was first degree robbery as to both. That the conduct of each defendant was to be considered separately was emphasized several times by the court; and it would appear that the jury should have known its task was to determine first, whether both participated, and then whether the participation involved a weapon used only by one. It is true that a verdict of first degree robbery against one practically demanded an identical verdict against the other, but only after a determination had been made that the "other" participated in the robbery as well. Such a determination was evidently made.

■ With respect to the question asked by the foreman, the trial judge should not have cut him off, but should have permitted him to complete his question. However, we perceive no prejudice. The court in its instructions made it clear that there were three possible verdicts with respect to each defendant—guilty of first degree robbery, guilty of second degree robbery, and not guilty of robbery—and gave the jury forms for each verdict. Certainly, the jury knew it could find one defendant innocent, and one guilty of first or second degree robbery, or both guilty of either first or second degree, or both innocent. If there was any confusion it arose from the situation with which the court was trying to deal, not from the instructions themselves.

Defendants' reliance upon *People* v. *Dail,* 22 Cal.2d 642 [140 P.2d 828], is misplaced. There, the confusion found by the appellate court resulted from a clearly erroneous instruction on a point followed by a correct instruction of the rule. (At p. 653.) In addition, there was comment made by the court that accentuated the error, and it was the existence of both factors which led to the court's holding of reversible error.

### Double Punishment

Morrison contends that his sentence for assault constitutes double punishment in violation of section 654. He asserts that the force relied upon to establish the robbery is the same as that required to prove the assault; that the application of force here was a single, indivisible transaction; and that the offenses were all incident to one objective.

■ Section 654, in relevant part, provides: "An act or omission which is made punishable in different ways by different provisions of this code may be punished under either of such provisions, but in no case can it be

punished under more than one; . . . ." Under this section double punishment for the commission of a single act is proscribed even though such act violates two or more sections of the Penal Code. (*People* v. *Smith,* 36 Cal. 2d 444, 448 [224 P.2d 719].)

It is apparent that the jury believed that Morrison had committed an assault on Bumb. Although at the trial Bumb testified that as the robbers were leaving the shorter of the two men, i.e., Medina, struck him with a hard object, there was also evidence contained in his statement to the Fort Bragg police, which was admitted in evidence, that while he was being tied "they started hitting me with something that was hard." Certainly, insofar as Morrison is concerned, it appears that the robbery and the assault constituted a single, indivisible transaction. The assault by Morrison was the means of committing the robbery and was merely incidental to the primary object of robbing Bumb. (See *People* v. *Logan,* 41 Cal.2d 279, 290 [260 P.2d 20]; *Neal* v. *State of California,* 55 Cal.2d 11, 19-20 [9 Cal.Rptr. 607, 357 P.2d 839].) Accordingly, Morrison may only be punished for the more serious offense of robbery. (*People* v. *Logan, supra,* at pp. 290-291; *Neal* v. *State of California, supra.*) The effect of the judgment as to the lesser offense insofar as the penalty alone is concerned must, therefore, be eliminated. (*People* v. *McFarland,* 58 Cal.2d 748, 763 [26 Cal.Rptr. 473, 376 P.2d 449].)

The judgment convicting Medina is affirmed. The judgment convicting Morrison is reversed insofar as it imposes a sentence for simple assault, and in all other respects is affirmed.

Sims, J., and Elkington, J., concurred.

The petition of appellant Medina for a hearing by the Supreme Court was denied October 18, 1972.