[Crim. No. 522.   Third Appellate District.—September 20, 1920.]

# THE PEOPLE, Respondent, v. GEORGE M. ZENTGRAF, Appellant.

[1] CRIMINAL LAW—BURGLARY—INSANITY — EVIDENCE —ᐧ WITHDRAWAL OF PLEA OF GUILTY AFTER REFUSAL OF PROBATION.—Where in a prosecution for burglary the defendant sought an acquittal upon the ground of insanity, evidence that the defendant had pleaded guilty with the expectation that he would be granted probation, but, it being refused, he withdrew the plea by consent of the court and entered the plea of not guilty, was admissible to rebut the theory that he was insane at the time of the commission of the alleged act.

[2] ID.—DISCHARGE FROM EMPLOYMENT—SHORTAGES IN COLLECTIONS—ᐧ CROSS-EXAMINATION OF DEFENDANT.—Where in such a prosecution the defendant had testified to matters covering a long period of time that had a tendency to show a defective memory and impaired reasoning power, there was no error in permitting the witness to be cross-examined as to an incident occurring some four or five years prior to the commission of the offense charged relative to his discharge by a bank for shortages in collections, where it was apparent from the remarks of the court that the evidence was to be considered as only bearing upon the question of sanity.

[3] ID.—JURY—READING OF TESTIMONY—CONSTRUCTION OF CODE.—Under section 1138 of the Penal Code, it is only where there is a disagreement among the jurors as to the testimony while deliberating on a verdict that the testimony must be read to them.

[4] ID.—MISCONDUCT OF DISTRICT ATTORNEY—REMARKS IN ARGUMENT —APPEAL.—A defendant cannot on appeal complain of remarks made by the district attorney in his argument to the jury, where no request was made to the trial court to instruct the jury to disregard them.

[5] ID.—INSANITY—PROOF BY PREPONDERANCE OF EVIDENCE—INSTRUCTIONS.—An instruction that a reasonable doubt as to the insanity of the defendant is not sufficient to justify an acquittal, but that the jury must be convinced that the defense is established by a preponderance of evidence, is not inconsistent with an instruction that the defense need not be proved beyond a reasonable doubt, but it is sufficient that it be proven by a preponderance of the evidence.

APPEAL from a judgment of the Superior Court of El Dorado County.   George H. Thompson, Judge.   Affirmed.

The facts are stated in the opinion of the court.

E. Fitzgerald, Eugene S. Wachhorst and Donald E. Wachhorst for Appellant.

U. S. Webb, Attorney-General, and J. Charles Jones, Deputy Attorney-General, for Respondent.

BURNETT, J.—Defendant was convicted of burglary in the first degree and the appeal is from the judgment and order denying his motion for a new trial. That defendant at night entered the store of Heusner Brothers, at Shingle Springs, El Dorado County, and took therefrom a large quantity of personal property is not disputed. He was apprehended therein about midnight with some of the property in his hands, many articles of various kinds having been loaded into his machine, which he had driven and left near the store. Thereupon, defendant admitted that he had unlocked the door and gone inside; he stated why he had stolen the property, implying that his motive was that of revenge, and he promised his captors a large sum of money if they would release and not prosecute him. The facts as thus detailed by the witnesses for the people are not controverted, but the defense of insanity was interposed by appellant, and it was upon that ground an acquittal was sought. There is some support for that theory, the principal element thereof consisting of the testimony of two physician experts based upon hypothetical questions. No doubt the jury might legally have concluded from the showing made that defendant was irresponsible, but a careful reading of the whole record can hardly fail to produce the conviction that the verdict is entirely just and should be upheld. Indeed, it is not disputed that the evidence warrants the verdict, but appellant claims that certain grave errors of sufficient moment to demand a reversal were committed at the trial.

[1] Of these the first relates to the action of the court in permitting evidence of the proceedings at the arraignment of the defendant. It thus appeared that the defendant had pleaded guilty with the expectation that he would be granted probation, but, it being refused, he withdrew the plea by consent of the court and entered a plea of not guilty. This evidence was admissible to rebut the theory of appellant that he was insane at the time the goods were taken by him. The

showing for the defense extended over a long period of time, including said date, and, according to the familiar rule, it was proper for the people to meet this evidence by showing that his conduct and declarations were those that character- ize the normal mind. That he pleaded guilty and asked for probation and upon its denial concluded that he would stand trial would seem to be some evidence that he under- stood the nature and probable consequences of the charge against him. We think there is a distinction between such case and the one wherein the defendant does not claim to be insane. An instance of the latter is found in *People* v. *Ryan,* 82 Cal. 617, [23 Pac. 121], wherein it was held to be error for the court to allow the plea of guilty to be put in evidence where it had been withdrawn and the plea of not guilty substituted. A peculiar feature also of that case was that without said evidence the defendant could not have been legally convicted. In view of that fact the supreme court said: "We do not think that the legislature, in passing the law under which the defendant was allowed to nullify and render *functus officio* his plea of guilty by substituting or putting in place of it a plea of not guilty, intended to say that, notwithstanding such substitution and doing away with the first plea, it may be given in evidence and sometimes serve as the only conclusive proof of a man's guilt under the plea of not guilty." Herein, of course, the important part of the evidence was that relative to the change of plea after probation was refused. It was proper to have this con- sidered as the act of a mind subject to the ordinary motives that influence human conduct.

[2] Appellant claims that "the next serious error is the ruling of the court in permitting the prosecution to intro- duce testimony of an incident occurring some four or five years prior to the alleged commission of the offense for which defendant was now on trial." The objection is based upon this part of the record: "Q. Then you quit the bank, did you? A. Yes. Q. Why did you quit? A. I had been short a few times in my collections, small amounts, and he called my attention to it, and that was not satisfactory, of course, so that was the end of my working there." The only objection to the question was the general one and that it was not cross-examination. The court based its ruling upon the proposition that the only defense was insanity, and since

the defendant had testified to matters covering a long period of time that had a tendency to show a defective memory and impaired reasoning power, this was proper cross-examination and also pertinent to the inquiry as to the mental status of the defendant. It is true that he had not been interrogated specifically about his employment at the bank, but the direct examination had taken a wide range for the purpose of showing his mental condition and it opened the door for an inquiry as to other circumstances included within the same period. (*People* v. *Mammilato,* 168 Cal. 207, [142 Pac. 58].) We may add that from the remarks of the court the jury must have understood that the evidence was to be considered as only bearing upon the sanity of the defendant. Since defendant did not request it, he cannot complain that a more direct and explicit instruction to that effect was not given.

The next point is that the court erred in failing to comply with the request of the jury to have certain testimony read. After having been out for a long time they came into court and one of the jurors said: "The jury would like to know —would like to hear the testimony of those two specialists, Hoisholt and Matthews; we got kind of mixed up on that question." Then Juror Frost said: "We would like to know whether he was legally sane or insane at the time of the act." Then, Juror Mrs. Eskew: "Or medically insane." It seems that the court understood that the jurors desired to have the instructions on the subject re-read and stated: "In answer to the question the instructions heretofore given will be read in these particulars." After reading them the court said: "Does that answer the question?" and Juror Frost replied: "Yes, sir." It is true that, thereafter, one of the jurors said: "I believe the information wanted is the testimony of those two doctors, if I may make clear the information we want," and in reply to the court's inquiry, "On what point?" he answered, "As to his sanity, legal or medical, at the time of the commission of the act." The court thereupon stated: "I will again read the instructions I have read." This was done and the jury was again sent out. Section 1138 of the Penal Code provides: "After the jury have retired for deliberation, if there be any disagreement between them as to the testimony, or if they desire to be informed on any point of law arising in the cause, they

must require the officer to conduct them into court. Upon being brought into court, the information required must be given in the presence of or after notice to the district attorney, and the defendant or his counsel, or after they have been called.''

The court and the attorneys seem to have understood that it was a question of law about which the confusion existed, and taking the whole colloquy into consideration that is probably not an unreasonable inference, notwithstanding one of the jurors did say that they would like to hear the testimony of the two specialists. At any rate, the attorney who was representing the defendant, if he desired to have such testimony read, should have made the matter plain to the court. We must assume, of course, that the trial judge was acting in good faith and had no disposition to withhold from the jury anything that they were entitled to. [3] Moreover, the statute provides that only when there is a *disagreement* among the jurors as to the testimony must it be read to them. It does not appear that there was such *disagreement* but only that they were not clear as to the difference between medical and legal insanity. This called particularly for the reading of the instructions rather than the testimony of the specialists. Indeed, the testimony of the experts threw no light upon this subject and its repetition would not have aided the jury. While they were subjected to a long and searching examination, the testimony amounted simply to an opinion that assuming the facts to be as stated by defendant's counsel, appellant was insane and incapable of distinguishing between right and wrong, whereas the question was left in doubt by reason of other facts detailed in the cross-examination. It is quite apparent that no prejudice was suffered by defendant, conceding for the sake of the point that such testimony should have been read.

Mrs. Roxy Burke, a witness for the people, testified in rebuttal that about the time of the burglary she heard a voice coming from the direction of the store, saying, ''Here, take this.'' She could not identify the voice but the contention of the prosecution was that since the defendant's only plea was that ''he was there in a dream and didn't know what he was doing,'' the voice would indicate the presence of another person and thus eliminate the theory of a dream. The argument is rather fanciful, we think, but the matter is of too little consequence to justify serious consideration.

Whether the ruling was right or wrong, it could hardly have influenced the verdict.

[4] Some objection is made to certain portions of the argument of the district attorney but we find no error therein. Speaking generally, it may be said that he did not transcend the bounds of legitimate discussion. Furthermore, one statement, to which objection was made, the court directed the jury to disregard and hence any possible injury was cured. (*People* v. *Amer,* 8 Cal. App. 137, [96 Pac. 401] ; *People* v. *Ward,* 134 Cal. 301, [66 Pac. 372].) As to the other criticised statements there was no request that the court direct the jury to disregard them, and hence appellant cannot now complain. (*People* v. *Shears,* 133 Cal. 154, [65 Pac. 295] ; *People* v. *Yee Foo,* 4 Cal. App. 730, [89 Pac. 450].)

[5] The only other complaint is that two instructions given by the court are inconsistent and misleading. The first of these is: "The jury are instructed that the law of the state of California is this: 'If the jury entertain a reasonable doubt concerning the proof of any material issue in a criminal case, it must give the defendant the benefit of that doubt and acquit him, unless the particular issue is that of the insanity of the defendant; and as to such issue of the insanity of the defendant a reasonable doubt is not sufficient to justify an acquittal at the hands of the jury, but they must be convinced that the said defense of insanity is established by a preponderance of the evidence.' " That this instruction stated the law correctly cannot be doubted. (*People* v. *Miller;* 171 Cal. 649, [154 Pac. 468].)

Nor can we see anything inconsistent therewith in the following instruction: "The defense of insanity need not be proved beyond a reasonable doubt to entitle the defendant to an acquittal; it is sufficient for the defense to be proved by a preponderance of evidence, to entitle the defendant to a verdict of not guilty. If, therefore, you believe that the preponderance of the evidence introduced in this case shows that Mr. Zentgraf, the defendant, was either insane or deprived of reason, or unconscious of what he was doing at the time of the commission of the act charged, you must acquit him."

The difficulty in the Miller case, *supra,* was that the trial court went further and gave an erroneous and misleading

definition of "preponderance of evidence." No such criticism can be made here.

Finally, it may be said, the record contains such persuasive and convincing evidence that the defendant understood the nature of the act which he perpetrated and was therefore responsible for his conduct, that, notwithstanding the supposititious opinion of said experts, it should be held that any other verdict would be unjust, and that if any error was committed it should be disregarded.

The judgment and order denying the motion for a new trial are affirmed.

Nicol, P. J., *pro tem.*, and Hart, J., concurred.