[Crim. No. 11354. In Bank. Apr. 19, 1968.]

THE PEOPLE, Plaintiff and Respondent, v. ALFRED GONZALES, Defendant and Appellant.

Alfred Gonzales, in pro. per., Lemaire, Mohi, Morales & Dumas and Frank C. Morales for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Philip C. Griffin, Deputy Attorney General, for Plaintiff and Respondent.

BURKE, J.—An information was filed charging Alfred Gonzales with selling heroin (Health & Saf. Code, § 11501) and a prior conviction of possession of narcotics (Health & Saf. Code, § 11500). He admitted the prior conviction. A mistrial was declared when the jury became deadlocked, but at the second trial the jury found defendant guilty of the offense charged. Thereafter, on June 15, 1965, a motion for a new trial was denied.

On the same date criminal proceedings were adjourned, and proceedings were instituted pursuant to former section 6451 of the Penal Code (now Welf. & Inst. Code, § 3051) to determine whether defendant was addicted to the use of narcotics or in imminent danger of becoming so addicted. He apparently was committed as a narcotics addict and was thereafter returned from the narcotics rehabilitation facility. On January 25, 1966, judgment of conviction was entered sentencing him to prison for the term prescribed by law. He appeals from the January 25, 1966, judgment, contending that the court erred in admitting certain evidence and in not complying with the jury's request to have specified testimony read.

As a preliminary matter, it is necessary to consider whether defendant is barred from now raising the claims of error by failing to appeal from the order denying his motion for a new trial. It is undisputed that he did not appeal from that order, and the Attorney General asserts that, since the claims of error could have been raised on such an appeal, defendant is precluded from now raising them. We do not agree.

Penal Code, section 1237 provides: "An appeal may be taken by the defendant: 1. From a final judgment of conviction . . .; a sentence or an order granting probation shall be deemed to be a final judgment within the meaning of this section; *upon appeal from a final judgment the court may review any order denying a motion for a new trial, except when an appeal from an order denying a motion for a new trial has previously been finally determined in cases where the defendant has been committed for sexual psychopathy, insan-*

*ity, or narcotics addiction.* 2. From an order denying a motion for a new trial, in cases where the defendant is committed before final judgment for sexual psychopathy, insanity, or narcotics addiction. *Such an appeal shall be dismissed if while it is pending an appeal is taken under subdivision 1 . . . ."* (Italics added.)

Here under subdivision 2 after his commitment for narcotics addiction defendant could have appealed from the order denying his motion for a new trial.[1] It is apparent from the language of the section, however, that his failure to do so does not bar him from raising the claims of error on his present appeal under subdivision 1. The italicized clause in subdivision 1 unmistakably shows that upon an appeal from a final judgment the court may review an order denying a motion for a new trial where, as here, the case does not come within the exception specified in that clause and there is but one final judgment within the meaning of the section. It is likewise apparent from the italicized sentence in subdivision 2 that the same issues that can be raised on an appeal taken under subdivision 2 can be raised on an appeal taken under subdivision 1. Otherwise there would be no reason to require dismissal of an appeal taken under subdivision 2 if while it is pending an appeal is taken under subdivision 1.

Cases such as *People* v. *Chavez,* 243 Cal.App.2d 761, 763 [52 Cal.Rptr. 633]; *People* v. *Howard,* 239 Cal.App.2d 75, 77 [48 Cal.Rptr. 443]; *People* v. *Glaser,* 238 Cal.App.2d 819, 821 [48 Cal.Rptr. 427]; and *People* v. *Wilkins,* 169 Cal.App.2d 27, 32 [386 P.2d 540], differ from the present one. In the cited cases the defendant was placed on probation after proceedings were suspended, no appeal was taken from the order granting probation, but thereafter when probation was revoked and sentence imposed the defendant appealed from the judgment. The cases state that on such an appeal the general rule is that the defendant's failure to appeal from the order granting probation estops him from claiming error with respect to matters occurring before that order, and review on appeal is restricted to the proceedings in connection with the revocation of probation and sentencing. Those cases are not analogous to the instant one because section 1237 contains substantially different provisions governing the two situations.

The failure here to present the claims of error on ap-

peal at the first opportunity to do so created dangers that witnesses might disappear or their memories fade should a retrial be necessary. Those same dangers exist where a defendant delays in moving for a new trial. Under Penal Code, section 1182 a defendant can move for a new trial long after his commitment for narcotics addiction so long as the motion is made before judgment or an order granting probation. (Cf. *Thurmond* v. *Superior Court*, 49 Cal.2d 17, 19 et seq. [314 P.2d 6].) The dangers caused by either type delay were and continue to be matters for the Legislature to consider; however, under Penal Code, section 1237, as it now reads, defendant is not barred from raising the claims of error on this appeal. To hold otherwise would create a trap foreclosing an appeal on the merits.

The evidence may be summarized as follows: Around 2:35 p.m. on December 29, 1964, a named informer, in the presence of Police Officer Richard Meraz, telephoned Dodie's Bar in Los Angeles from a market a few blocks away. The informer, after asking to speak to Alfred, stated, ''Hello, Alfred, I want to buy two quarts of paint. . . . It is okay if you are with your old lady, and I am at the market. I will see you in about ten minutes.''

At the approximate time of the telephone call Police Officer John Hanks saw a man whom he believed to be defendant leave Dodie's Bar and drive off in a blue Corvair. A few minutes later Officer Meraz, who was sitting in his car at the market parking lot, observed defendant arrive there in a blue Corvair, and watched the informer go over to the Corvair, hand defendant some money, and receive in exchange a balloon, the contents of which later were determined to be heroin. Meraz then saw defendant drive away. Other officers gave testimony tending to corroborate Meraz's observations. A few minutes after the heroin sale the police arrested defendant at Dodie's Bar.

Defendant presented the defense of alibi.

■■ Testimony of Officer Meraz regarding the contents of the recited telephone conversation was admitted over objections on the ground of hearsay and lack of proof that defendant had any connection with the conversation, and defendant contends that the court thereby erred. However, the testimony was offered merely to show that the conversation was held and not to prove the truth of the matters asserted. The court thus did not err in overruling the hearsay objec-

tion. (*Rogers* v. *Superior Court*, 46 Cal.2d 3, 8 [291 P.2d 929]; *People* v. *King*, 218 Cal.App.2d 602, 609-610 [32 Cal. Rptr. 479]; *People* v. *Dalton*, 172 Cal.App.2d 15, 18-19 [341 P.2d 793].) Defendant's connection with the conversation is shown by evidence that at the approximate time of the conversation he left the bar, met the informer by the market, and sold him heroin.

■ There is likewise no merit to defendant's claim that the court erred in overruling an objection, based on the opinion rule, to testimony of Officer Hanks regarding the identity of the man who left the bar. (See former § 1870, subd. 9, of Code Civ. Proc.;[2] *Holland* v. *Zollner*, 102 Cal. 633, 637-639 [36 P. 930, 37 P. 231]; Witkin, Cal. Evidence (1966) pp. 352-353.) Hanks testified that in his opinion the man he saw leave the bar was defendant, that clothing and specified characteristics of the man appeared to be the same as those of defendant, but that Hanks did not see the facial characteristics of the man and could not positively identify defendant as the man. Lack of positiveness as to the man's identity went to the weight and not to the competency of the evidence. (*People* v. *Avery*, 35 Cal.2d 487, 492 [218 P.2d 527]; *People* v. *Abner*, 209 Cal.App.2d 484, 491 [25 Cal.Rptr. 882]; *People* v. *Harris*, 87 Cal.App.2d 818, 821-823 [198 P.2d 60].)

■ After deliberating several hours, the jury returned to the courtroom about 3:30 p.m. and requested that the information and certain testimony of Officers Meraz and Hanks be read. The court read the information but advised the jury that the court reporter could not have his notes available until the next morning. The court also stated that it would be unfair for the jury to take the attitude that, since the testimony might be unavailable until the next day, they would terminate their deliberations one way or the other without it; that the jury could not be released until the verdict was reached; that they could deliberate further that afternoon, but that, if it was impossible to do so until the testimony was available, they could stop deliberating until the next morning; and that they should consult each other as to what they wished to do. The jury thereupon retired and 15 minutes later returned and stated that they had arrived at their verdict. The guilty verdict was then read.

It thus appears that before the court was able to fulfill the

---

[2]Former section 1870, which was repealed by Statutes 1965, chapter 299, section 58, page 1360, operative January 1, 1967, governed defendant's trial and is applicable on this appeal. (See Evid. Code, § 12, subd. (b).)

request the jury manifestly decided that the reading of the testimony was unnecessary. Under the circumstances the court did not err in receiving the verdict without reading the testimony to the jury. (Cf. *People* v. *Warren,* 130 Cal. 678, 681-682 [63 P. 87] ; *People* v. *Slaughter,* 33 Cal.App. 365, 378-380 [165 P. 44].)

The judgment is affirmed.

Traynor, C. J., McComb, J., Tobriner, J., Mosk, J., and Sullivan, J., concurred.

PETERS, J., Concurring and Dissenting—I concur in the portion of the majority opinion that holds that defendant may raise his claims of error on this appeal. Although the failure to present the claims of error on appeal at the first opportunity to do so creates the risk that witnesses might be unavailable or their memories fade should a retrial be necessary, it is, at least, equally undesirable to require a defendant, who may be in favor of obtaining the medical treatment available under the narcotic commitment program, to appeal from an order denying his motion for new trial, which order was part of the proceedings resulting in the desired commitment. In any event the balancing of the two conflicting considerations is a matter for the Legislature, and, as the majority opinion ably demonstrates, the Legislature has resolved the conflict in favor of permitting the raising of errors at trial on the issue of guilt after the commitment proceedings have been terminated and judgment entered. I also concur in the majority's solution of the evidence questions presented.

I cannot agree with the majority holding that it was not error for the court to coerce the jury to forgo its right to hear the reporter read testimony requested by it. Section 1138 of the Penal Code provides that if the jurors are in disagreement as to the testimony they can request that it be read to them and that, if they do so request, the court must read it to them. Any coercion to compel the jurors to forgo the right and duty set forth in section 1138, whether that coercion is the result of inadvertence or design, is improper. In the instant case the jury was coerced to forgo its right and duty to hear the transcript, and the error was clearly prejudicial.

Section 1138 of the Penal Code provides: "After the jury have retired for deliberation, if there be any disagreement between them as to the testimony, or if they desire to be informed on any point of law arising in the case, they must require the officer to conduct them into court. Upon being

brought into court, the information required must be given in the presence of, or after notice to, the prosecuting attorney, and the defendant or his counsel, or after they have been called.''

The rights and duties imposed by section 1138 are unqualified. There is nothing in the section to suggest by any means of construction, interpretation, or exception, that the command of the section may be ignored where the convenience of the trial judge, his whim, or the circumstances before him may indicate that it is desirable to ask the jurors to forget their disagreements as to the testimony, and make their decision without regard to those disagreements.

Thus, if a trial judge suggested by reason of whim or caprice, that he would not permit the jury to review the evidence, this court or any other appellate court would have no hesitancy to say that a refusal to permit the jury to review the evidence received constituted error. Similarly, if a trial judge suggested that because of inconvenience to himself or inconvenience to the jurors he would refuse to permit the jurors to review the evidence received, such procedure would be obvious error. The effect upon the parties and upon the jurors of a refusal to permit them to review the evidence to reconcile conflicting versions or uncertainties is no different when it is due to circumstances making immediate review impossible than when it is due to whim or convenience, and accordingly it seems clear to me that it is error to refuse the jurors their right to review the evidence when that refusal is due to a necessary delay in obtaining the reporter's notes of the trial.

The same rule must apply when, as here, instead of an outright refusal to permit review, the trial judge tells the jury to reconsider its request to review evidence in the light of the fact that, if the jury persists in its request, it could not hear such evidence until the following day and that it would be kept together until then. The judge so told the jury at 3:30 in the afternoon, and the coercive effect of his statement is shown by the fact that the jury returned with its verdict in 15 minutes. In these circumstances it would require unusual stamina on the part of one or more dissenting jurors to stand on their rights to review the evidence against the remaining jurors who would, of course, be more than somewhat rebellious at the thought of being locked up for the night at 3:30 in the afternoon (see *People* v. *Crowley*, 101 Cal.App.2d 71, 78-79 [224 P.2d 748]), and we can never know whether the

minority jurors' recollection of the evidence was the correct one.

Considerations of harmony or convenience must give way when the integrity of the decision-making process is called into account and when there is a danger that extraneous factors, which do not properly bear on the question of guilt or innocence, may compel those on whom we have placed the burden, however awesome, of determining truth to abdicate their duty and their right to review evidence and to properly determine the facts free from any coercion.

In the instant case the error in coercing the jurors to forgo their right to review the evidence must be held prejudicial. The jurors requested the testimony of Officers Meraz and Hanks pertaining to the description of the person in the supermarket parking lot who sold the narcotics. Officer Hanks said that he did not see the man's facial characteristics and could not positively identify defendant as the man. Although Officer Meraz identified defendant as the man, he testified that both he and the man were sitting in cars, that they were about 50 feet apart at the time of the observation, and that he had to look through the back window of a third car which was between them to see the person who made the sale. The identification testimony was of critical importance to the case of the prosecution, and in this state of the record it cannot be said that a review of the identification testimony would have supported the recollection of the majority or minority jurors.

*People* v. *Warren,* 130 Cal. 678 [63 P. 87], relied upon by the majority is distinguishable. Although the court there told the jury that the requested testimony could not be read until the following morning, the jury did not return its verdict until the following morning and thus it is clear that the jury could not have been coerced to forgo its right to hear the testimony by fear of being locked up for the night. The other case relied upon by the majority, *People* v. *Slaughter,* 33 Cal. App. 365 [165 P. 44], is distinguishable for the same reason because again the verdict was returned early in the morning and there was no reason to believe that the jury felt compelled to forgo its desire to hear the testimony requested in order to avoid being locked up for the night.

I would reverse the judgment.

Appellant's petition for a rehearing was denied May 15, 1968. Peters, J., was of the opinion that the petition should be granted.