[Crim. No. 9942. First Dist., Div. One. Jan. 12, 1973.]

THE PEOPLE, Plaintiff and Respondent, v.
CHARLES EDWARD STAFFORD, Defendant and Appellant.

COUNSEL

Edwin R. Baltimore for Defendant and Appellant.

Evelle J. Younger, Attorney General, Herbert L. Ashby, Chief Assistant Attorney General, William E. James, Assistant Attorney General, and Robert R. Granucci, Deputy Attorney General, for Plaintiff and Respondent.

OPINION

MOLINARI, P. J.—Defendant appeals from a judgment entered upon a jury verdict finding him guilty of first degree robbery (Pen. Code, § 211), assault (Pen. Code, § 245), and conspiracy to commit robbery (Pen. Code, § 182, subd. 1). His essential contention on appeal is that the trial judge exceeded his jurisdiction in refusing to comply with a request by the jury for the rereading of certain testimony. He also contends that the court erred in denying a motion to suppress certain evidence on the ground it was acquired by virtue of an unreasonable and illegal search and seizure. None of these contentions has merit. Therefore, we must affirm the judgment.

On the fourth day of the trial at 2:08 p.m., the jury retired for deliberations. At 10:25 p.m. the judge instructed the bailiff to inquire of the jury if there was a possibility that they could reach a verdict.[1] The bailiff was

---

[1] The jury's deliberations had only been interrupted for about one and three-quarters hours for dinner.

advised by a juror that they could not answer yes or no. At 11 p.m. the trial judge advised counsel for the People and defendant, in the latter's presence, that he had been informed by the bailiff that the jury desired that the testimony of one or two witnesses be read. The judge stated that there were no provisions for lodging the jury for the night and that unless there was an objection he proposed to declare a mistrial. An objection was interposed by the district attorney. Defendant's counsel made no objection.

The jury was thereupon brought into court. The judge inquired of the foreman if the jury had arrived at a verdict and the foreman responded that it had not. The judge then advised the jury that he had been informed by the bailiff that it wished to have "considerable" testimony reread, but since the hour was late and there was "no provision for overnight" he had no alternative but to dismiss the jury since there was no possibility of reading testimony of that length. The judge then stated "If you wish to retire a few minutes and tell me, or right now." One of the jurors said, "Shall we go in and take a ballot?" At this juncture the judge said, "I am not forcing you to do anything." The jury then retired to the jury room.

At 5 minutes to 12 midnight, the judge advised respective counsel and defendant that he was "going to have the bailiff go to the door and say simply that the jury will be dismissed in ten minutes." The bailiff knocked on the jury room door and as he did a voice from within the jury room said, "We have reached our decision—we have reached our decision. We will complete the form in a moment."[2]

At 11:57 p.m. the jury returned to the courtroom. At that time the judge announced that the jury wanted a clarification as to first and second degree robbery and noted that this request was being made in the presence of defendant and his attorney. The judge then read instructions defining first and second degree robbery. The jury then retired to the jury room and returned to the courtroom at 12:05 a.m., at which time the foreman, upon inquiry by the judge, announced that the jury had arrived at a verdict. The verdict of the jury was then read by the clerk.

■ Defendant asserts that the trial court refused to accede to the jury's request for the rereading of certain testimony and that such refusal constitutes prejudicial error.

The pertinent statutory law is contained in Penal Code section 1138[3]

---

[2]The record discloses that these voices were heard by the trial judge who noted that the bailiff had said nothing at all.

[3]Unless otherwise indicated, all statutory references are to the Penal Code.

which provides as follows: "After the jury have retired for deliberation, if there be any disagreement between them as to the testimony, or if they desire to be informed on any point of law arising in the case, they must require the officer to conduct them into court. Upon being brought into court, the information required must be given in the presence of, or after notice to, the prosecuting attorney, and the defendant or his counsel, or after they have been called."

In considering defendant's contention we first observe that "the statute provides that only when there is a *disagreement* among the jurors as to the testimony must it be read to them." (*People* v. *Zentgraf*, 49 Cal.App. 336, 340 [193 P. 274].) In the instant case it does not appear that there was such disagreement but only that the jury wanted certain testimony to be reread.[4] Moreover, under the circumstances of this case, defendant was not deprived of a substantial right under the subject statute. The record discloses that the trial judge informed the jury that the testimony requested could not be read because of the lateness of the hour and that since there was no provision for keeping the jury together overnight, he would be required to declare a mistrial if they were unable to agree. As to the latter statement, the trial judge was merely reiterating the discretionary power given him by section 1140.[5] (See *Clemensen* v. *Municipal Court*, 18 Cal. App.3d 492, 501-502 [96 Cal.Rptr. 126]; *People* v. *Caradine*, 235 Cal. App.2d 45, 47 [44 Cal.Rptr. 875]; *People* v. *Finch*, 213 Cal.App.2d 752, 763 [29 Cal.Rptr. 420].) Upon being so advised, the jury resumed its deliberations and apparently concluded that they could agree upon a verdict without having such testimony read.

In *People* v. *Warren*, 130 Cal. 678 [63 P. 87], the jury, while considering the cause, asked for the reading of the testimony of a witness which would have required two hours to read. The court fixed 9 o'clock of the next morning as the time for such reading and adjourned court until

---

[4]Defendant had appended to his opening brief a declaration executed by his trial counsel regarding the subject of the testimony which the jury asked to have reread. We are precluded from considering this declaration for " 'It is elementary that the function of an appellate court, in reviewing a trial court judgment on direct appeal, is limited to a consideration of matters contained in the record of trial proceedings, and that "Matters not presented by the record cannot be considered on the suggestion of counsel in the briefs." [Citation and fn.]' " (*People* v. *Edgmon*, 267 Cal.App. 2d 759, 770 [73 Cal.Rptr. 634].)

[5]Penal Code section 1140 provides as follows: "Except as provided by law, the jury cannot be discharged after the cause is submitted to them until they have agreed upon their verdict and rendered it in open court, unless by consent of both parties, entered upon the minutes, or unless, at the expiration of such time as the court may deem proper, it satisfactorily appears that there is no reasonable probability that the jury can agree."

that time. A few minutes before the time fixed for such reading the jury announced their verdict of guilty. Under these circumstances the Supreme Court held that the court did not deny the right of the defendant to have the testimony read, and in doing so observed that "The court would not be required to remain in session all night for the purpose of having testimony read to the jury." (At p. 682.)

Similarly, in *People* v. *Slaughter,* 33 Cal.App. 365 [165 P. 44], the jury after several hours' deliberation requested that a certain portion of the testimony be read to them. Upon being informed that it would take some time to locate it, the jury expressed an opinion that it might reach a verdict without it, which it did. Under these circumstances, it was held that the defendant was not deprived of any substantial right to which he was entitled under section 1138. (At p. 380.)

Another case involving similar circumstances is *People* v. *Gonzales,* 68 Cal.2d 467 [67 Cal.Rptr. 551, 439 P.2d 655]. In that case the trial judge told the jury that the testimony they had requested to be read would be read the next day, but that they could continue to deliberate if they could do so without the reading of such testimony. The jury resumed its deliberations and after 15 minutes returned and stated that it had reached a verdict. The verdict of guilty was then read. It was held that under these circumstances the court did not err in receiving the verdict without reading the testimony to the jury. (At pp. 472-473.)

Adverting to defendant's other contention that the search of the Pontiac automobile was unlawful because it was conducted without a search warrant, we first observe that the validity of the search and seizure must be determined on the basis of the evidence presented at the special hearing of defendant's motion to suppress evidence pursuant to section 1538.5. (*Thompson* v. *Superior Court,* 262 Cal.App.2d 98, 103 [68 Cal.Rptr. 530]; *Mesaris* v. *Superior Court,* 4 Cal.App.3d 976, 978 [85 Cal.Rptr. 124].) At such hearing it was stipulated that no search warrant had been obtained, and that the evidence taken at the preliminary hearing was to be considered by the court for the purposes of the motion in addition to the evidence that was adduced at the special hearing.

As disclosed by the evidence presented at the special hearing, the relevant facts are as follows: On October 9, 1970, in the afternoon, a robbery occurred at the Monte Mart supermarket in Salinas where defendant was employed as a security supervisor. The robber fled on foot with money bags containing $85,000. He was pursued by one of the owners of Monte Mart, her son and several employees. A yellow Pontiac convertible auto-

mobile came up in back of the robber and pulled over to the curb as if to stop. The robber pointed a gun at the car and got into the passenger's seat. Melvin Barlow, one of Monte Mart's employees who was pursuing the Pontiac in a Monte Mart truck, observed defendant in the driver's seat of the Pontiac and then saw him get out of the car. The Pontiac then drove off. Defendant, upon seeing the Monte Mart truck, walked back towards it and told Barlow that he would pursue the Pontiac. Defendant then drove off in the truck. In the meantime the police had been advised of the robbery and several police cars joined in the pursuit of the Pontiac.

In the pursuit the Pontiac collided with several objects, sustained damages which slowed it down, and ultimately was forced to a stop by the police. The police ordered the driver out of the car and proceeded to search the driver who was dressed in male clothing. The search revealed that the driver was a woman who was subsequently identified as Patricia Clay. Miss Clay was then placed in a patrol car and transported to the police station. At the time Miss Clay was placed under arrest one of the officers looked into the Pontiac where he observed a gun and two money sacks on the front seat.

About five minutes after the arrest and after Miss Clay had been removed from the scene the police officers made a search of the vehicle. On the right front seat they found a pistol with the clip removed and the shells ejected on the seat; a spent shell on the left rear floorboard; a revolver under the right front seat; and a false beard underneath the left front seat. In the trunk the police found a photograph of defendant and Miss Clay, some male clothing, and a purple dress. The vehicle registration certificate was found in the vehicle and it showed that the car was registered to a "Charles Stafford."

The purple dress found in the car was identified as the dress worn by Miss Clay when she checked into a motel in Salinas on the morning of the day of the robbery.

■ Since the officers proceeded to search the trunk of the Pontiac without the benefit of a search warrant, the burden was on the prosecution to show proper justification for the search. (*Badillo* v. *Superior Court,* 46 Cal.2d 269, 272 [294 P.2d 23].)

We first observe that the search of the car and the trunk cannot be justified as an incident to Miss Clay's arrest. ■ "A search incident to an arrest is limited to the arrestee's person and 'the area from within which he might gain possession of a weapon or destructible evidence.' [Citation.]" (*Mestas* v. *Superior Court,* 7 Cal.3d 537, 541 [102 Cal.Rptr.

729, 498 P.2d 977].) ■ As noted in *Mestas,* once the police have removed an arrestee from the vicinity of his car a subsequent search of that car cannot be considered incident to his arrest. (7 Cal.3d at p. 541; see *Chambers* v. *Maroney,* 399 U.S. 42, 47 [26 L.Ed.2d 419, 426, 90 S.Ct. 1975].)

Other circumstances surrounding an arrest may, however, make it reasonable for a police officer to search an arrestee's car without a warrant even after he has been removed from the scene. These circumstances are those which afford the police officer probable cause for believing that the automobile contains stolen goods, contraband or dangerous instrumentalities. (*Carroll* v. *United States,* 267 U.S. 132, 149-150 [69 L.Ed. 543, 549-550, 45 S.Ct. 280]; *Chambers* v. *Maroney, supra,* 399 U.S. 42, 48-49 [26 L.Ed.2d 419, 426-427]; *Coolidge* v. *New Hampshire,* 403 U.S. 443, 458-461 [29 L.Ed.2d 564, 578-580, 91 S.Ct. 2022]; *People* v. *Terry,* 70 Cal.2d 410, 428 [77 Cal.Rptr. 460, 454 P.2d 36]; *Mestas* v. *Superior Court, supra,* 7 Cal.3d 537, 541, fn. 3, and p. 542; *People* v. *Medina,* 26 Cal.App.3d 809, 816 [103 Cal.Rptr. 337].) In the application of this rule the record must disclose that the officer harbored a subjective belief that the automobile probably contained such items. (*Mestas* v. *Superior Court, supra,* at p. 542; *People* v. *Miller,* 7 Cal.3d 219, 226 [101 Cal.Rptr. 860, 496 P.2d 1228].)

■ Where the officer does not have probable cause for believing that the automobile contains stolen goods, contraband, or dangerous instrumentalities, but has probable cause to believe that the vehicle contains other objects lawfully subject to seizure, he may make a warrantless search not incident to an arrest where it is not practicable to secure a warrant because the vehicle can be quickly moved out of the jurisdiction in which the warrant may be sought. (*Coolidge* v. *New Hampshire, supra,* 403 U.S. 443, 459-460 [29 L.Ed.2d 564, 578-579]; *Carroll* v. *United States, supra,* 267 U.S. 132, 153 [69 L.Ed. 543, 551]; *Chambers* v. *Maroney, supra,* 399 U.S. 42, 51 [26 L.Ed.2d 419, 428]; *People* v. *Medina, supra,* 26 Cal.App.3d 809, 816.) This rule is not applicable in the present case because the Pontiac automobile was both disabled and in police custody, and, thus, in no danger of being moved out of the jurisdiction.

■ We are thus relegated to determining whether there were circumstances surrounding Miss Clay's arrest justifying a search of the car after she had been removed from the scene such as to show probable cause to search for stolen goods, contraband, or dangerous instrumentalities. Upon a review of the record we hold that such circumstances were present in the instant case. That record discloses that the police officers were advised

over police radio that a robbery had been committed at the Monte Mart and that the robber had fled the scene in a Pontiac automobile after the robber had forced the driver of the Pontiac out of the car at gun point. They had probable cause, therefore, to believe that a robbery had been committed, that the Pontiac had been stolen, and that the robber was fleeing in said vehicle. This probable cause was fortified by the circumstances surrounding the pursuit of the vehicle and its failure to stop until it became disabled. The police also had probable cause to believe that the vehicle contained stolen goods and a gun or guns since the circumstances of the robbery had been communicated to them.

Accordingly, when they apprehended the robbery suspect they had probable cause to search for the stolen property and the contraband or dangerous instrumentality used in the perpetration of the robbery. This probable cause was further fortified by the presence of a gun and the money bags in plain sight. We observe, moreover, that since the police officers had probable cause to believe that the Pontiac was stolen they were justified in searching the vehicle to ascertain the identity of the owner. (*People* v. *Upton,* 257 Cal.App.2d 677, 684 [65 Cal.Rptr. 103].)

We therefore conclude, in the light of the authorities above cited, that there were sufficient circumstances surrounding Miss Clay's arrest justifying a search of the Pontiac for the fruits of the robbery, weapons used in the perpetration of the robbery, and any evidence disclosing the identity of the owner. Such justification did not cease when the officers found the gun and money bags on the front seat and the identity of the owner as disclosed in the registration certificate. Being possessed of probable cause that the automobile contained stolen property and dangerous weapons, the officers were reasonably justified in continuing their search for other property that might have been stolen or other dangerous instrumentalities that might have been in the possession of the robber.

Moreover, since the police officers had reasonable cause to suspect that Miss Clay had stolen the Pontiac, they were justified in opening the trunk of the car in a further attempt to identify the owner of the vehicle and to ascertain whether any valuables might have been stolen along with the car. (*People* v. *Upton, supra,* 257 Cal.App.2d 677, 684.)

The judgment is affirmed.

Sims, J., and Elkington, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied March 8, 1973.