Filed 8/18/14  P. v. McElroy CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>CHRISTOPHER A. McELROY,<br><br>    Defendant and Appellant. | B249638<br><br>(Los Angeles County<br>Super. Ct. No. TA127183) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Ronald V. Skyers, Judge.  Affirmed.

Evan Charles Greenberg, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Paul M. Roadarmel, Jr. and David A. Voet, Deputy Attorneys General, for Plaintiff and Respondent.

## INTRODUCTION

A jury found defendant and appellant Christopher A. McElroy guilty of second degree robbery. On appeal, he contends that the trial court failed to notify his trial counsel of jury questions before responding to them and that the prosecutor committed misconduct. We reject these contentions and affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

### I.     Factual background.

During the early morning of February 27, 2013, Janae Mixon was on Long Beach Boulevard, working as a prostitute. She saw a car speeding down the street towards her. Defendant got out of the car. Mixon recognized defendant, having seen him in the area before. When defendant ran toward Mixon, she became afraid and ran, but she was pushed and fell. She dropped her cell phone, which defendant took. He left in his car.

Mixon flagged down a police officer and gave him the suspect's description. Defendant was soon detained, and Mixon identified him as the man who took her phone. Her cell phone was in defendant's car.

Video surveillance captured the incident, and the video was played for the jury.

### II.    Procedural background.

On May 31, 2013, a jury found defendant guilty of second degree robbery (Pen. Code, § 211).[1]

On June 19, 2013, after the trial court denied defendant's new trial motion, the court sentenced defendant to three years, doubled to six years based on a prior strike found true by the court, plus five years under section 667, subdivision (a)(1). Defendant's total sentence therefore was 11 years in prison.

---

[1]     All further undesignated statutory references are to the Penal Code.

2

**DISCUSSION**

## I.     Request for read back.

The jury asked to see the video of the incident and for read back of testimony. Defendant contends that defense counsel was not given an opportunity to object and to discuss with the court its responses to these requests. We find that no prejudicial error occurred.

### A.     *Additional facts.*

The jury retired for deliberations on Friday, May 31, 2013, at 2:45 p.m.

According to defendant's new trial motion, after the jury retired for deliberations, the court clerk called defense counsel at approximately 3:30 p.m. and informed him that the jury wanted to watch the video. At approximately 4:00 p.m., the court clerk called defense counsel again and advised that the jury wanted read back of Mixon's testimony and that the court would have the jury return the next court day (Monday, June 3) for read back. But a few minutes later, the court clerk called defense counsel and informed him that the jury had reached a verdict. Defense counsel was never shown the jury question form.

According to the court's minutes, the jury buzzed for a question, and the parties were notified by phone. The jury buzzed again with another question and the parties were again notified by phone. Without having received read back, the jury returned its verdict at 3:45 p.m.

The jury question forms show that the trial court wrote "yes," in response to the "[r]equest to see the video" and wrote "yes, for Monday at 9:00 a.m." in response for a "copy of the testimony [of] Ms. [M]ixon."

### B.     *No prejudicial error occurred.*

The jury asked to view the video of the incident and to have Mixon's testimony read back. The requests were made sometime around 3:30 p.m., on a Friday afternoon. Due to the lateness of the hour, the trial court informed the jury it would have to return on Monday for read back. Defendant argues that his trial counsel was not consulted before

3

the trial court gave this response, which prejudiced him because it made the jury "rush to judgment" to avoid having to return on Monday.

"After the jury have retired for deliberation, if there be any disagreement between them as to the testimony, or if they desire to be informed on any point of law arising in the case, they must require the officer to conduct them into court. Upon being brought into court, the information required must be given in the presence of, or after notice to, the prosecuting attorney, and the defendant or his counsel, or after they have been called." (§ 1138; see also *People v. Nunez* (1983) 144 Cal.App.3d 697, 701-703 [it was error, albeit harmless error, for the trial court to read back testimony without first notifying defense counsel].) A conviction will not be reversed for a violation of section 1138 unless the appellant establishes prejudice under the standard in *Chapman v. California* (1967) 386 U.S. 18, that is, whether the error is harmless beyond a reasonable doubt. (*People v. Jennings* (1991) 53 Cal.3d 334, 383-385.)

There is no ground for reversal. First, the record does not clearly show that the trial court failed to inform defense counsel of its responses to the questions *before* the responses were given to the jury. According to the court's minutes, after the jury buzzed with a question, "[b]oth parties are notified via phone, the court response to question." Although defendant asserts that his counsel was not notified of the response until after it was given, the record is not so clear.

Second, even if we assume that the trial court told the jury it had to return on Monday for read back without first consulting defense counsel,[2] we discern no prejudicial error. In *People v. Hawthorne* (1992) 4 Cal.4th 43, 61, for example, the jury asked, " 'What do we do now?' " after indicating that a member of the jury could not decide whether the defendant was guilty or not guilty. Without informing counsel, the trial court told the jury to continue deliberating. (*Id.* at pp. 62-63.) Although *Hawthorne* noted that there is a "general proscription against ex parte communications with a deliberating

---

[2]     The focus of defendant's argument is the court's response to the jury telling it to return on Monday for read back. Defendant neither argues that any prejudice arose from informing the jury "yes," it could watch the video of the incident, nor can we discern any.

4

jury," it could not find that any error was prejudicial or that defendant suffered any impairment of his due process rights. (*Id.* at p. 70.)

Here too we cannot find that defendant's constitutional rights were violated. Other than the bare written responses to the jury, the record shows that the trial court did not have any discussions with the jury regarding the read back outside of defense counsel's presence. The court said it "had no discussion with the jury at any time regarding what the content was or what the read back was, except that they mentioned that it was all of the first witness's testimony, the victim witness testimony. [¶] And then, because of the lateness of the hour, it was getting to be near 4:00 o'clock, I told the bailiff to tell them that they could come back on Monday because by the time they got the transcript ready and read it would be after the 4:00 o'clock hour. [¶] So that was the only communication, which is normal, and the fact that they decided not to wait for the read back and that they had a verdict is very often the case, they don't wait. [¶] There have been many cases in this court where the jury decided on a verdict after asking for read back, maybe they decided that they didn't want it or they had enough, otherwise I don't know their reasoning because there was no discussion with them."

That the jury rendered its verdict before the court was able to read back the requested testimony does not support a finding of prejudice. (See, e.g., *People v. Stafford* (1973) 29 Cal.App.3d 940, 942-945 [no error occurred where jury reached a verdict before hearing read back of testimony]; *People v. Gonzales* (1968) 68 Cal.2d 467, 472-473 [no error where trial court told jury read back would not be available until next morning and the jury could, in its discretion, continue deliberations until then]; *People v. Warren* (1900) 130 Cal. 678, 681-682 [trial court informed jury that requested read back of testimony could not take place until 9:00 a.m. the next day, and the jury returned with its verdict shortly before 9:00 a.m.; no error found].)

Other than the fact that the request for read back occurred late Friday afternoon and the jury rendered its verdict Friday afternoon without hearing the read back, there is no evidence that the verdict was based on any improper consideration, such as a desire to avoid returning to court on Monday. If that were the case, it would be just as easy for a

5

jury to render a not guilty verdict. As the trial court said, it often sees juries reach a verdict without listening to requested read back. This was also a straightforward case, with all testimony and argument completed in one day and no dispute that defendant took the victim's cell phone. We therefore find no prejudicial error.

## II. The prosecutor did not commit misconduct.

Defendant contends that the prosecutor committed misconduct by disparaging defense counsel and by referring to facts not in evidence. We find that no misconduct occurred.

"The applicable federal and state standards regarding prosecutorial misconduct are well established. ' "A prosecutor's . . . intemperate behavior violates the federal Constitution when it comprises a pattern of conduct 'so egregious that it infects the trial with such unfairness as to make the conviction a denial of due process.' " ' [Citations.] Conduct by a prosecutor that does not render a criminal trial fundamentally unfair is prosecutorial misconduct under state law only if it involves ' " 'the use of deceptive or reprehensible methods to attempt to persuade either the court or the jury.' " ' [Citation.]" (*People v. Samayoa* (1997) 15 Cal.4th 795, 841.) Misconduct that infringes upon a defendant's constitutional rights mandates reversal of the conviction unless the reviewing court determines beyond a reasonable doubt that it did not affect the jury's verdict. (*Chapman v. California, supra,* 386 U.S. 18.) A violation of state law only is cause for reversal when it is reasonably probable that a result more favorable to the defendant would have occurred had the district attorney refrained from the untoward comment. (*People v. Watson* (1956) 46 Cal.2d 818, 836.) Claims of prosecutorial misconduct are ordinarily forfeited unless the defendant objects at trial. (*People v. Martinez* (2010) 47 Cal.4th 911, 956; *People v. McKinzie* (2012) 54 Cal.4th 1302, 1358.)[3]

---

[3] Although defense counsel did not object to the alleged misconduct, we address the issue.

Here, in response to defense counsel's argument that the jury should convict defendant of only the lesser included offense of petty theft, the prosecutor argued that where the crime is caught on camera, "the only choice for the defense is to mitigate, mitigate, mitigate. Let's find out what little tiny thing we can do to not get him off, but lessen the blunt of the force. It happens all the time." The prosecutor then said: "Somebody walks up and shoots somebody in the head, we charge murder, because when you shoot somebody in the head, you intend to kill them. Well, they're always going to say, it wasn't really a murder; he didn't say, I want to kill you. It was more of a manslaughter, something like that. They argue that until they're blue in the face."

Defendant argues that these comments both disparaged his trial counsel and misstated the evidence. A prosecutor may not attack defense counsel's integrity or cast aspersions on defense counsel. (*People v. Hill* (1998) 17 Cal.4th 800, 832.) But " ' " 'a prosecutor is given wide latitude during argument. The argument may be vigorous as long as it amounts to fair comment on the evidence, which can include reasonable inferences, or deductions to be drawn therefrom. [Citations.] . . .' [Citation.] 'A prosecutor may "vigorously argue his case and is not limited to 'Chesterfieldian politeness' " [citation], and he may "use appropriate epithets . . . ." ' " [Citation.]' [Citation.]" (*Id.* at p. 819.) Thus, a prosecutor may give his or her opinion on the state of the evidence, vigorously attack the defense case, and focus on the deficiencies in defense counsel's tactics and factual account. (*People v. Redd* (2010) 48 Cal.4th 691, 735; see also *People v. Wharton* (1991) 53 Cal.3d 522, 567.)

In *People v. Sandoval* (1992) 4 Cal.4th 155, 183, for example, the prosecutor repeatedly referred to defense counsel's alleged attempts to mislead the jury, accused counsel of perpetrating a fraud on the court, and referred to the defense theories as " 'ridiculous' " and " 'nonsense.' " *Sandoval* found that the comments were improper but not prejudicial. (*Id.* at p. 184.)

The comments here, however, did not disparage defense counsel. They were a fair comment on the defense strategy, which was that defendant was guilty, at most, of the lesser offense of petty theft. Nor did the comments refer to facts not in evidence; namely,

7

that defense counsel "always" rely on a mitigation strategy, and that it "happens all the time." (See, e.g., *People v. Hill, supra,* 17 Cal.4th at pp. 827-828 [statements of fact not in evidence are worthless as a matter of law but can be "dynamite" to a jury].) This too was nothing more than acceptable "advocate's hyperbole." (*People v. Sandoval, supra,* 4 Cal.4th at p. 184.) The jury would have understood that the prosecutor was not stating as "fact" that all defense counsel ask that their clients be convicted of a lesser included offense. Instead, the prosecutor was being hyperbolic in commenting on the defense tactics. There is no reasonable likelihood that the jury construed or applied the challenged comments in an objectionable fashion. (*People v. Samayoa, supra,* 15 Cal.4th at p. 841.)

We therefore conclude that no misconduct occurred.

## DISPOSITION

The judgment is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

ALDRICH, J.

We concur:

KLEIN, P. J.

KITCHING, J.