Filed 1/14/25  P. v. Jimenez Alejandre CA1/5

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> MIGUEL JIMENEZ ALEJANDRE, <br><br> Defendant and Appellant. | A168602 <br><br> (Marin County Super. Ct. No. SC216309A) |

Miguel Jimenez Alejandre (Jimenez) appeals from his first-degree murder conviction, asserting that the trial court erred in failing to satisfy the jury's request to rehear the testimony of the prosecution's forensic pathologist before the verdict was reached. We affirm.

### BACKGROUND

### A.

Jimenez admitted that he killed the victim, David Nunez Sanchez, in a fight, so a main issue at trial concerned whether the killing was willful, deliberate, and premeditated as required for a first-degree murder conviction (Pen. Code, § 189, subd. (a)).[1] The two men worked as gardeners, and Sanchez was Jimenez's supervisor.  Before the killing, Sanchez had raised concerns about Jimenez's work performance and told him he had to put in more

---

[1] Undesignated statutory references are to the Penal Code.

1

effort. Jimenez testified that, on the day of the murder, while the two were working outdoors at an apartment complex, Sanchez attacked him with large gardening shears. Jimenez got his pocketknife out of his pocket and cut Sanchez with the knife. Jimenez testified that "[e]verything went very fast."

Police later discovered Sanchez's body at the apartment complex, under a pile of branches. In addition, police recovered (from Jimenez's home) the shirt Jimenez had worn that day, which had blood on the sleeves.

The forensic pathologist, Dr. Joseph I. Cohen, performed an autopsy on Sanchez. After being designated an expert, Dr. Cohen testified that Sanchez had died of " 'sharp force injuries' " to his neck caused by a knife or other sharp implement. He opined that Sanchez's injuries were likely caused by five to 10 separate knife attacks, including multiple knife marks or wounds on the spine and neck. Sanchez had "a very large, deep, sharp-force injury to the front of the neck" that reached his spine; the neck injuries severed his major arteries, jugular vein, larynx, and esophagus. Sanchez also had injuries to his right collar bone, right shoulder, and right forearm.

Dr. Cohen acknowledged the possibility that the victim was the initial aggressor. But he also opined that, "given the fact that this victim has severe incised wounds to the neck, deep ones with multiple injuries, that tells me that the perpetrator had an intention to harm that person." According to Dr. Cohen, a pocketknife could have caused the injuries but "[i]t would take a lot of effort" to inflict the victim's injuries with a pocketknife "because the knife is relatively small." "[I]t would take some focus, some concentration, and effort to" inflict the wounds Sanchez had suffered using a pocketknife.

In addition, Dr. Cohen testified that the neck wounds "more likely than not" caused spurting of blood when the artery

2

was cut. He noted that an attack from behind would reduce the likelihood that the perpetrator would get blood on their clothing.

Relying on the brutal nature of Sanchez's injuries, the prosecution argued that Jimenez had committed a premeditated killing. The prosecution asserted, based on Dr. Cohen's testimony and the fact that Jimenez only had blood on the sleeves of his shirt, that Jimenez attacked Sanchez from behind or from the side. The defense likewise relied on Dr. Cohen's testimony, arguing that it established that the first wound was likely inflicted from the front of the victim rather than from behind.

**B.**

On the morning of the second day of deliberations, the jury sent a note to the court asking to rehear Dr. Cohen's testimony.

The trial court has a statutory obligation to satisfy jury requests to rehear witness testimony. (*See People v. Box* (2000) 23 Cal.4th 1153, 1213-1214, disapproved of on another ground by *People v. Martinez* (2010) 47 Cal.4th 911.) Section 1138 provides that "[a]fter the jury have retired for deliberation, if there be any disagreement between them as to the testimony, or if they desire to be informed on any point of law arising in the case, . . . the information required must be given."

After receiving the jury's request, however, the trial court observed that the court reporter "is not here." The prosecution proposed that the court "[t]ell them to continue deliberating while we work on that," and the court agreed, stating "[t]hat's a good idea." The court noted that it did not know where the court reporter was or how far away she was. The court added, "we'll continue to attempt to locate her." The court's minutes indicate the court's response to the jury's note was then returned to the jurors.

A few hours later, the jury sent another note to the court with a question about the verdict forms. After the court brought

3

the jury into the courtroom, the foreperson related that the jury had reached a verdict. The jury found Jimenez guilty of first-degree murder. The jury also found true the allegation that in committing first-degree murder, Jimenez personally used a knife. The court polled the members of the jury, each of whom confirmed the verdict. Defense counsel subsequently noted for the record that Dr. Cohen's testimony was never read back to the jury.

## DISCUSSION

Jimenez contends that the trial court violated section 1138 by failing to read back witness testimony as requested by the jury. We disagree.

When a jury requests a read back of witness testimony, but resumes deliberating and reaches a verdict before the court has a chance to fulfill the request, the courts have rejected claims of error under section 1138. For example, in *People v. Gonzales* (1968) 68 Cal.2d 467 (*Gonzales*), the trial court informed the jury that the testimony might not be available until the following day and reminded the jury that it could not be released without a verdict. (*Id.* at p. 472.) The court stated that it would be unfair for the jury to decide to terminate their deliberations "one way or the other" without the testimony, and that they could deliberate further but could also stop deliberating if they felt it was impossible to proceed without first hearing the testimony. (*Ibid.*) Fifteen minutes later, the jury informed the court they had reached a verdict, which was then read. (*Ibid.*) Our Supreme Court reasoned that the court did not err because, before the court was able to fulfill the jury's request, the jury decided it was unnecessary for them to hear the testimony again. (*Id.* at pp. 472-473.)

Similarly, in *People v. Slaughter* (1917) 33 Cal.App. 365 (*Slaughter*), after the trial court informed the jury that it would take some time to locate the relevant portion of the testimony,

4

the jury suggested it might be able to reach a verdict without the read back and proceeded to do so.  (*Id*. at p. 380.)  *Slaughter* explained that, based on these circumstances, it was clear the jury had subsequently concluded that it did not need to rehear the testimony.  (*Ibid.*; *see also People v. Stafford* (1973) 29 Cal.App.3d 940, 944.)

The same is true here.  Given that the court reporter was not available to find and read back the testimony, the court reasonably decided to tell the jury to "continue deliberating while [the court] work[ed] on" its request.[2]  The court sought to fulfill the jury's request by "continu[ing] to attempt to locate" the court reporter.  If the jurors felt they could not reach a verdict without re-hearing the testimony, they were not required to pronounce a verdict.  They were free to send the court another note asking about the status of their request for a read back.  Indeed, the jury did send the court a subsequent note, but about an unrelated question.  As in *Gonzales* and *Slaughter*, the jury apparently determined it was unnecessary to rehear the testimony after all.

---

[2] In his reply brief, Jimenez argues for the first time that there is no evidence that the trial court actually responded to the jury's request, because there is no written record of any message transmitted to the jury.  In his opening brief as well as elsewhere in his reply brief, however, Jimenez acknowledged that "the jury was . . . told that the court was 'working on their request.' "  Consistent with this concession, the trial court's minutes reflect that after the court discussed the jury's request with counsel, the court's response to the jury's note was provided to the jurors.  In any event, in light of Jimenez's concession and his failure to raise the argument in his opening brief, we need not address the point further.  (*See, e.g., Long v. Forty Niners Football Co., LLC* (2019) 33 Cal.App.5th 550, 557.)

Jimenez's reliance on *People v. Butler* (1975) 47 Cal.App.3d 273 (*Butler*), is unavailing.  In *Butler*, the trial court denied the jury's request to rehear the testimony of five witnesses, which amounted to " 'practically the whole trial.' " (*Id.* at pp. 277-279.) Some of the testimony was " 'so faint' " that the jury was unable to hear it.  (*Id.* at p. 278.)  In declining the jury's request, the trial court instructed the jury to " 'go back into the jury room and do your very best to arrive at a verdict *based on the information that you have.*' " (*Id.* at p. 279.)  Concluding that the trial court violated section 1138, *Butler* reasoned that the court's instruction may have minimized the importance of the requested testimony and caused some jurors to "surrender[] their independent judgment" as to the evidence "to those who professed better hearing and memory." (*Id.* at p. 281.)  Here, however, the trial court never rejected the jury's request; nor did the court instruct the jury to reach a verdict based on incomplete information. Unlike in *Butler*, the circumstances here do not suggest that the jury was coerced into reaching a verdict based on a partial understanding of the record.

## DISPOSITION

The judgment is affirmed.

BURNS, J.

WE CONCUR:


JACKSON, P.J.
SIMONS, J.

*People v. Jimenez Alejandre (A168602)*

6